1

**ALAN M. SIMPSON, P.C.**
  Attorneys at Law
2
7301 East Sundance Trail, Suite B201
  Carefree, Arizona 85377
3
(480) 488-1119        Fax:    (480) 488-5557
Arizona State Bar 006203
4
e-mail:  alan@alansimpson.net

5

6
Attorneys for Rachel Jernigan, Plaintiff.

7

8
### UNITED STATES DISTRICT COURT

9
### DISTRICT OF ARIZONA

10
**RACHEL JERNIGAN,**                          )   CASE NO. CIV.
                                              )
11
                            Plaintiff,        )   **COMPLAINT FOR DAMAGES**
                                              )   **42 U.S.C. §1983 AND §1988**
12
        **vs.**                               )   **VIOLATION OF RIGHTS**
                                              )   **SECURED BY THE**
13                                            )   **CONSTITUTION OF THE**
**KYLE RICHARD, CITY OF**                     )   **UNITED STATES**
14
**GILBERT, PAMELA BROCK, D.**                 )
**LANDGRAF, RANDY McLAWS, and**               )   **COMPLAINT FOR DAMAGES**
15
**DOES 1-10,**                                )   **_BIVENS_ ACTION**
                                              )
16
                            Defendants.       )   **COMPLAINT FOR DAMAGES**
                                              )   **BASED ON THE TORT LAWS**
17
_____       )   **OF THE STATE OF ARIZONA**

18
                                                  **[DEMAND FOR JURY TRIAL]**

19
1.      This is an action for money damages brought by Rachel Jernigan (Jernigan)

20
        pursuant to 42 U.S.C. §1983 and §1988, and the Fourth, Fifth and Fourteenth

21
        Amendments to the United States Constitution, against Defendants City of

22
        Gilbert, Sergeant Randy McLaws (McLaws), Detective Pamela Brock (Brock),

23
        Detective D. Landgraf (Landgraf) and Does 1-10 in their individual capacities.

24
2.      Plaintiff JERNIGAN also seeks money damages against these Defendants for

25
        violation of her rights under the laws of the State of Arizona committed by them

26
        against her, including her imprisonment from November 10, 2000 through

27
        February 5, 2008, based on a wrongful conviction for crimes she did not commit.

28

3.   On February 5, 2008, JERNIGAN'S criminal conviction was set aside and she was exonerated of bank robberies for which she had been arrested, convicted and imprisoned. JERNIGAN had been incarcerated since her arrest on November 10, 2000, a period of over seven years and two months.

**SERVICE OF ARIZONA TORT CLAIMS ON STATE DEFENDANTS**

4.   On July 9, 2008, JERNIGAN served her written tort claim on the City of Gilbert. Service of the written claim satisfied the requirements of A.R.S. §12-821.01, known as the claims statute.

5.   On July 11, 2008, JERNIGAN served her written tort claim on McLAWS and LANDGRAF.  Service of the written claim satisfied the requirements of A.R.S. § 12-821.01, known as the claims statute.

6.   On August 11, 2008 JERNIGAN served her written tort claim on BROCK who had retired from the City of Gilbert and had moved to Texas.

7.   No action was taken on any of the Claims within sixty (60) days, therefore all claims are deemed denied.  Ariz. Rev. Statutes §12-821.01(E).

**JURISDICTION AND VENUE**

8.   This court has subject matter jurisdiction because Plaintiff seeks relief, in part, based on alleged violations of her federal constitutional rights, hence this lawsuit involves federal questions. 28 U.S.C. §1331.

9.   The claims alleged herein arose from events and/or omissions occurring in the County of Maricopa, the Cities of Gilbert, Mesa, Chandler, Tempe and Phoenix, Arizona.  Therefore, venue lies in the District of Arizona. 28 U.S.C. § 1391(b)(2).

**CAPACITY**

10.  JERNIGAN is an individual over the age of 18 and at all times herein mentioned resided either in Maricopa County, Arizona, or at the Federal Bureau of Prisons located in Dublin, California.

11. At all times material herein, Defendant RICHARD was duly appointed and acting as a Special Agent for the Federal Bureau of Investigation (FBI) assigned to the Phoenix, Arizona, Field Office.

12. At all times material herein Defendants McLAWS, BROCK and LANDGRAF were duly appointed and acting as police officers, employed by the City of Gilbert, State of Arizona.

13. At all times relevant to this matter, each said Defendant RICHARD, McLAWS, BROCK and LANDGRAF were acting within the course and scope of such employment.

14. At all times herein mentioned, Defendant City of Gilbert was a municipal entity duly organized and existing as such under the laws of and within the State of Arizona.

**ACTS UNDER COLOR OF LAW**

15. At all times mentioned in this Complaint, the individual Defendants were acting under color of law, that is, under the color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of Arizona, the City of Gilbert and federal law.

**JOINT ACTION AND DAMAGES**

16. At all times herein mentioned, the Defendants, acted jointly and in concert with each other. Each Defendant had the duty and the opportunity to protect the Plaintiff from the unlawful actions of the other Defendants but each Defendant failed and refused to perform such duty, thereby proximately causing Plaintiff's injuries.

17. As a proximate result of the aforementioned acts and omissions of Defendant and each of them, Plaintiff sustained mental pain, suffering, shock to her nervous systems, and suffered and continues to suffer great anguish, anxiety, humiliation, fear, anger, depression, upset, nervousness and emotional distress; and by reason

thereof, Plaintiff claims damages from Defendants in a sum to be determined at the time of trial.

18.   The above described acts and omissions of each Defendant (except Defendant City of Gilbert) were done by each Defendant knowingly, intentionally and maliciously and for the purpose of harassment, oppression and inflicting injury upon Plaintiff, and in reckless, wanton and callous disregard of Plaintiff's safety, security and civil rights; and by reason thereof, Plaintiff claims exemplary and punitive damages from each Defendant (except Defendant City of Gilbert) in a sum to be determined at the time of trial.

19.   Exemplary damages are not sought for any alleged tortious conduct in violation of Arizona State laws.

20.   By reason of the above described acts and omissions and each of them, Plaintiff was required to and did retain attorneys to institute and prosecute the within action, and to render legal assistance to Plaintiff that she might vindicate the loss and impairment of her constitutional rights; and by reason thereof, Plaintiff requests payment by Defendants of a reasonable sum as and for attorney fees pursuant to Title 42 U.S.C. §1988.

**FACTS RELEVANT TO ALL CAUSES OF ACTION**

21.   On September 20, 2000 the Bank of America located at 15 E. Guadalupe Road, Gilbert, Arizona was robbed at approximately 10:30 a.m.   The robber was described as an Hispanic or Asian[1] female, short in height, having dark hair in a ponytail and wearing a baseball cap,  and with dark eyes.  The victim/teller was Elizabeth Chlupsa (CHLUPSA).

22.   On or about September 20, 2000 U.S. Postal Inspector Jose Obando (OBANDO) was speaking with Federal Bureau of Investigation Special Agent Janelle Miller (MILLER) about other recent bank robberies.  OBANDO told MILLER about  a

---

[1]The term used by some witnesses was Oriental.

suspect in shopliftings from post offices that had a similar description as the bank robber.  OBANDO had identified his suspect as JERNIGAN.  Federal Bureau of Investigation Special Agent RICHARD contacted OBANDO and thereafter obtained a booking photograph of JERNIGAN.  RICHARD would later write in his report that the September 20, 2000 bank robbery surveillance photographs closely matched JERNIGAN's booking photograph.

23.   On or about September 22, 2000 Gilbert Police Detective BROCK, Gilbert Police Detective LANDGRAF and RICHARD created a photo lineup, known as a *six pack*. The lineup six pack (LINEUP1153) used a booking photograph of JERNIGAN in the number 6 position (bottom right position).

24.   LINEUP 1153 was overly suggestive and was prepared with such recklessness as to make it entirely unreliable to establish probable cause to arrest and irreparably prejudiced JERNIGAN'S right to a fair trial thereby denying her liberty without Due Process.

25.   On September 22, 2000 BROCK and RICHARD showed lineup 1153 to CHLUPSA.  According to police reports, CHLUPSA viewed lineup 1153 for about 45 seconds and then pointed to position number 6 (JERNIGAN).

26.   On September 25, 2000 a criminal complaint was filed in the United States District Court, criminal cause 00-3258 M, charging JERNIGAN with the September 20, 2000 robbery of the Bank of America.  RICHARD was the complainant. A warrant for the arrest of JERNIGAN was issued that same day.

27.   On October 11, 2000 an indictment was returned and filed in the United States District Court, District of Arizona, CR 2000-01010 PHX-EHC, charging JERNIGAN with the armed bank robbery of the Bank of America on September 20, 2000.

28.   On October 11, 2000 the Bank of America located at 906 E. Baseline Road, Tempe, Arizona was robbed at approximately 10:20 a.m. The robber was described as a short Hispanic female with black or dark brown hair, a lot of

eyeliner, and wearing a dark colored hooded zippered sweatshirt with a hood.  The victim / teller was Kerry Ward (WARD).

29.	On or about October 14, 2000 WARD viewed the bank robbery surveillance photographs from the September 20, 2000 robbery.  As soon as WARD saw the bank photograph she said that she was pretty sure it was the same person who robbed her on October 11, 2000.

30.	Between October 14 and October 25, 2000 WARD was shown LINEUP1153 by RICHARD.  WARD could not identify anyone as her robber.

31.	On October 25, 2000 the Bank of America located at 2298 N. Alma School, Chandler, Arizona was robbed at approximately 10:35 a.m.  The robber was described as a short Hispanic female with black hair pulled in a ponytail and wearing a dark zippered sweat top with possibly with a hood.  The victim / teller was Colleen Etherington (ETHERINGTON).  A getaway vehicle was described as a black Toyota 4-Runner.

32.	On October 28, 2000 RICHARD showed LINEUP1153 to ETHERINGTON who identified the person in position number 6 as the person who robbed her.

33.	JERNIGAN was arrested on November 10, 2000 on the warrant issued on September 25, 2000.

34.	JERNIGAN made a statement to RICHARD at the time of her arrest that she had not robbed any bank.

35.	JERNIGAN made a statement to RICHARD at the time of her arrest that the person who was responsible for the bank robberies would continue to rob more banks.

36.	On November 14, 2000 JERNIGAN was ordered detained pending trial in cause CR 2000-01010-PHX-EHC.

37.	On November 28, 2000 the Bank One Bank located at 802 N. Gilbert, Gilbert, Arizona was robbed at approximately 10:45 a.m.   The robber was described as a short Hispanic or Oriental/Hawaiian/Asian, female with black hair

1    pulled in a ponytail and wearing a dark blue zippered sweat top, possibly with a

2    hood.  No weapon was displayed by the robber.

3    38.    On November 30, 2000 the Bank of America located at 5807 E. McKellips, Mesa

4    was robbed at approximately 12:00 p.m.  The robber was described as a short

5    Hispanic or Oriental with black hair and wearing a dark blue zippered sweatshirt

6    with hood.  A getaway vehicle was described as a dark Toyota 4-Runner by

7    witness William O'Brien (O'BRIEN).

8    39.    There was no physical evidence that connected JERNIGAN with the bank

9    robberies of September 20, 2000, October 11, 2000, and October 25, 2000.

10    Obviously, JERNIGAN could not have committed the bank robberies on

11    November 28, 2000 or November 30, 2000 because she was in custody.

12    40.    On January 2, 2001 a superseding indictment was returned charging JERNIGAN,

13    in counts 1 and 2, for the armed bank robbery of the Bank of America that

14    occurred on September 20, 2000.  Count 3 charged the robbery for the Bank of

15    America on October 11, 2000 and count 4 for the robbery of the Bank of America

16    occurring on October 25, 2000.

17    41.    Before the superseding indictment was returned, Defendants RICHARD, BROCK,

18    LANDGRAF and McLAWS knew that the Bank One had been robbed on

19    November 28, 2000 and the Bank of America on November 30, 2000.  These

20    Defendants also knew that  the suspect description in these robberies closely

21    matched the suspect described in the robberies of September 20, October 11, and

22    October 25  2000, that the modus operandi were all similar, and that all of the

23    victim banks were located within a few miles of each other.   Defendants also

24    knew that JERNIGAN could not have committed the robberies of November 28

25    and 30, 2000 because JERNIGAN was in custody.  At no time prior to the

26    submission to the grand jurors, on January 2, 2001, of the investigation of

27    JERNIGAN, did these Defendants provide advice to Assistant United States

28    Attorney Michael Morrissey (MORRISSEY) that two other bank robberies had

occurred after JERNIGAN had been arrested and detained, committed by a suspect of a similar description to the suspect who had committed the robberies of the Banks of America on September 20, 2000, October 11, 2000 and October 25, 2000.

42.    MORRISSEY did not offer evidence to the grand jury on January 2, 2001 that two other bank robberies (as detailed above) had occurred after JERNIGAN had been arrested.    The withholding of this evidence was a direct consequence of his ignorance of the facts surrounding the robberies that occurred after JERNIGAN'S detention. The withholding of the evidence of the additional robberies significantly infringed upon the ability of the grand jury to exercise independent judgment and affected the fundamental fairness of the proceeding.    The withholding of this evidence prejudiced JERNIGAN as she had to stand trial on the constitutionally defective superseding indictment.

43.    On February 14, 2001 Kathleen Golliher (GOLLIHER) and Yarjanic Nath (NATH), both witnesses to the September 20, 2000 robbery, were shown LINEUP1153 by RICHARD; they chose the person depicted in position No 6 as the robber of September 20, 2000.    The person depicted in position No. 6 was JERNIGAN.

44.    On February 15, 2000 the District Court granted JERNIGAN's motion to sever counts 3 and 4 from counts 1 and 2.

45.    On February 20, 2001 Donovan Grierson (GRIERSON), a witness to the September 20, 2000 robbery, was shown LINEUP1153 by RICHARD; GRIERSON chose the person depicted in position No 6 as the robber of September 20, 2000.

46.    On March 19, 2001 Lorraine Hawley (HAWLEY), a witness to the September 20, 2000 robbery, was shown LINEUP1153 by RICHARD; HAWLEY chose the person depicted in position No 6 as the robber of September 20, 2000.

47. At the time of the identifications made by GOLLIHER, NATH, GRIERSON and HAWLEY, as stated above, RICHARD knew that two other bank robberies had occurred after JERNIGAN's arrest and detention. RICHARD also knew that the suspect descriptions and the modus operandi of the female robber of these banks and the three banks cited in the superseding indictment of January 2, 2001 were all similar. RICHARD knew or should have known that showing LINEUP1153 to NATH, GOLLIHER, GRIERSON and HAWLEY would lead to an unreliable identification.

48. RICHARD failed to tell MORRISSEY that LINEUP1153 was shown to NATH, GOLLIHER, GRIERSON and HAWLEY under circumstances which would lead to an unreliable result, given RICHARD'S knowledge of facts as described above. MORRISSEY was misled concerning the reliability of the identifications by these witnesses. MORRISSEY thereafter presented trial evidence of the identifications based on LINEUP1153, which resulted in JERNIGAN'S misidentification at trial and a deprivation of her due process rights to a fair trial.

49. In March 2001 JERNIGAN proceeded to jury trial on counts 1 and 2 of the superseding indictment. The jury was sworn on March 20, 2000. On March 23, 2000 the jury returned a verdict of guilty on counts 1 and 2. JERNIGAN was sentenced to 168 months of imprisonment for the convictions on counts 1 and 2.

50. On December 11, 2001 the Bank of America located at 15 E. Guadalupe Rd, Gilbert, Arizona was robbed at approximately 11:20 AM. The robber was described as a Hispanic or Asian[2] female, short, having dark hair worn in a ponytail and dark eyes wearing a dark blue zippered sweatshirt with hood. The victim/teller was GOLLIHER. A tracking device was taken by the robber. Juanita Rodriguez Gallegos (RODRIGUEZ) was arrested and identified as the robber.

---

[2]The term used by some witnesses was Oriental.

- 9 -

51.  The physical characteristics of RODRIGUEZ and the modus operandi of the December 11, 2001 robbery bore a similarity to the suspect descriptions and modus operandi of the robberies committed on the Banks of America on September 20, 2001, October 11, 2000, October 25, 2000, and November 30, 2000; and, the Bank One robbery of November 28, 2000.

52.  RICHARD, McLAWS, LANDGRAF and BROCK knew that on December 11, 2001 RODRIGUEZ was arrested for the robbery of the Bank of America at 15 E. Guadalupe, Gilbert, Arizona.   This was the same bank that was robbed on September 20, 2000 and for which JERNIGAN was convicted on March 23, 2001. These Defendants also knew of the robberies of November 28 and November 30, 2000.  These Defendants knew that the suspect descriptions and modus operandi in these three robberies were all similar.  These Defendants also knew that the suspect descriptions and modus operandi of these three robberies bore similarities to the robberies charged in JERNIGAN's superseding indictment.   These Defendants failed to advise MORRISSEY or any other competent authority of RODRIGUEZ' arrest and the many facts that linked RODRIGUEZ to robberies charged in JERNIGAN's superseding indictment.

53.  On April 1, 2002 RODRIGUEZ executed a plea agreement under which she agreed to plead guilty to Count 4 of the indictment returned in the United States District Court for the District of Arizona, cause CR02-057-PHX-SRB and admitted committing the robbery of the Bank of America on December 11, 2001, the Bank One on November 28, 2000 and the Bank of America on November 30, 2000.

54.  While JERNIGAN was serving her prison sentence, she learned that a woman fitting the suspect description of the robber of the banks for which JERNIGAN had been wrongfully charged with robbing, was now in federal custody for bank robbery. JERNIGAN learned that this was RODRIGUEZ.  In January 2004,

JERNIGAN filed a motion for a new trial asserting that (1) the government violated her due process rights under *Brady v. Maryland* by failing to disclose before trial material, exculpatory evidence known to the government, and alternatively that (2) evidence discovered after trial required that JERNIGAN receive a new trial pursuant to Federal Rule of Criminal Procedure 33.

55.     The district court denied her motion for new trial in January 2005, and JERNIGAN appealed. The trial court's ruling was affirmed by a panel of the Ninth Circuit Court of Appeals.

56.     The Ninth Circuit voted to rehear the case en banc.  On rehearing the court held that the withheld evidence was material and that JERNIGAN was prejudiced by its suppression.  The court concluded that JERNIGAN was deprived of a fair trial, reversed the panel and district court, and remanded to the district court for a new trial. *United States v. Jernigan*, 492 F.3d 1050, 1057 (9th Cir. 2007).

57.     The en banc court found that the *"[T]he government knew shortly after Jernigan's arrest, but did not disclose, that witnesses to two additional bank robberies, which took place close to the bank she was charged with robbing, offered strikingly similar descriptions of the perpetrator. Witnesses described the November 28th robber as "Hispanic or Oriental" with "[a] little acne," "5'1"-5'2,"" and "[d]ark brown hair." The November 30th robber was described as "Female," "Hispanic," "5'1"-5'2"," with a "Pot [sic] Marked Face." She was also described as a "small Asian woman under 5 ft." The police bulletin described a Hispanic female, 30s, 5'02", 130 pounds, black hair, pock marked cheeks and braces." United States v. Jernigan,* 492 F.3d 1050, 1055 (9th Cir. 2007).

58.     On February 5, 2008 the United States moved to dismiss the indictment which motion was granted. JERNIGAN was released and, as of that date, had been in custody for 7 years, 2 months and 26 days.

59. RICHARD was assigned to the Phoenix Office of the FBI and was assigned to the bank robbery squad of its Violent Crimes Major Offender Squad during the time period which included 2000 and 2003.

60. RICHARD was the lead agent and had primary responsibility for the involvement of the Federal Bureau of Investigation in the investigation of the bank robbery of September 20, 2000.

61. RICHARD was the lead agent had primary responsibility for the involvement of the Federal Bureau of Investigation in the investigation of the bank robbery of October 11, 2000.

62. RICHARD was the lead agent and had primary responsibility for the involvement of the Federal Bureau of Investigation in the investigation of the bank robbery of October 25, 2000.

63. RICHARD was the lead agent and had primary responsibility for the involvement of the Federal Bureau of Investigation in the investigation of the bank robbery of November 28, 2000.

64. RICHARD was lead agent and had primary responsibility for the involvement of the Federal Bureau of Investigation in the investigation of the bank robbery of November 30, 2000.

65. RICHARD was the lead agent and had primary responsibility for the involvement of the Federal Bureau of Investigation in the investigation of the bank robbery of December 11, 2001.

66. RICHARD knew that the suspect descriptions and modus operandi of the robbery suspect in all robberies as described above were similar.

67. Gilbert Police Sgt. McLAWS was involved in the coordination of the investigations of the robberies occurring in the City of Gilbert of the Bank of America on September 9, 2000, the Bank One on November 28, 2000 and the Bank of America on December 11, 2001.

68.  McLAWS had knowledge of the similar descriptions of the robbery suspect and the similar modus operandi used in committing the robberies occurring in the City of Gilbert of the Bank of America on September 20, 2000, the Bank One on November 28, 2000 and the Bank of America on December 11, 2001.

69.  LANDGRAF had knowledge of the similar descriptions of the robbery suspect and the similar modus operandi used in committing the robberies occurring in the City of Gilbert of the Bank of America on September 20, 2000, the Bank One on November 28, 2000 and the Bank of America on December 11, 2001.

70.  BROCK had knowledge of the similar descriptions of the robbery suspect and the similar modus operandi used in committing the robberies occurring in the City of Gilbert of the Bank of America on September 20, 2000, the Bank One on November 28, 2000 and the Bank of America on December 11, 2001.

71.  At no time prior to JERNIGAN's sentencing did RICHARD, McLAWS, LANDGRAF or BROCK tell the prosecuting attorney, JERNIGAN's defense attorney, or JERNIGAN that additional bank robberies had occurred in the weeks following JERNIGAN's arrest and that the descriptions of the robber were similar to descriptions of the bank robber who committed the offenses of September 20, 2000; October 11, 2000 and October 25, 2000.

72.  At no time prior to the JERNIGAN's own discovery of RODRIGUEZ did RICHARD, McLAWS, LANDGRAF, or BROCK tell JERNIGAN'S prosecuting attorney, her defense attorney, or JERNIGAN that RODRIGUEZ was arrested following the commission of the bank robbery of December 11, 2001.

73.  JERNIGAN is a hispanic female standing approximately 4'11".

74.  RODRIGUEZ is an Hispanic female standing approximately 4'11".

75.  The Bank of America located at 906 E. Baseline Road, Tempe, Arizona which was robbed on October 11, 2000 is approximately 9. 2 miles from the Bank of America that was robbed on September 20, 2000.

76. The Bank of America located at 2298 North Alma School Road, Chandler, Arizona which was robbed on October 25, 2000 is approximately 6.0 miles from the Bank of America that was robbed on September 20, 2000.

77. The Bank One located at 802 N. Gilbert Road, Gilbert, Arizona which was robbed on November 28, 2000 is approximately ½ block to the southwest from the Bank of America that was robbed on September 20, 2000.

78. The Bank of America located at 5807 E. McKellips, Mesa, Arizona which was robbed on November 30, 2000 is approximately 11 miles from the Bank of America that was robbed on September 20, 2000.

79. The Bank of America that was robbed on September 20, 2000 was robbed again on December 11, 2001.

80. There were 184 bank robberies that were committed in the State of Arizona in 2000.

81. Six percent of the bank robberies committed in 2000 were committed by Hispanics.

82. Approximately 8% of bank robberies that occurred in 2000 were committed by females.

83. RICHARD, McLAWS, LANDGRAF, and BROCK acted in concert and reached an understanding to withhold their knowledge of the Bank One robbery of November 28, 2000 and the Bank of America robberies of November 30, 2000 and December 11, 2001 from MORRISSEY, JERNIGAN and her attorney/s.

84. Defendants employed legal process for an unlawful object, specifically not a purpose which it was intended by the law to effect.

///

# FIRST CLAIM FOR RELIEF
# FEDERAL CIVIL RIGHTS CLAIMS
## 42 U.S.C. §1983

- 14 -

**Conspiracy to Violate Plaintiff's**

**Fourth, Fifth and Fourteenth Amendment Rights**

**MALICIOUS PROSECUTION**

**vs.**

**All Defendants Except Defendant City of Gilbert**

85.    Plaintiff realleges and incorporates by reference, each allegation of paragraphs 1 through 84, as though fully set forth hereat.

86.    Defendants RICHARD, BROCK, McLAWS and LANDGRAF, acting in concert, instituted the criminal action against the Plaintiff.

87.    The prosecution ended in the Plaintiff's favor when charges were dismissed on February 5, 2008.

88.    There was no probable cause to institute the criminal proceeding on which Plaintiff was tried and convicted or to continue the criminal proceeding given the exculpatory information known by these Defendants before and during Plaintiff's trial.

89.    No reasonable peace officer, given the same facts and circumstances, would have believed that there was probable cause to institute or to continue the criminal proceedings against JERNIGAN.

90.    Moreover, Defendants RICHARD, BROCK, McLAWS and LANDGRAF were aware that on December 11, 2001 while JERNIGAN was still appealing her March 23, 2001 conviction, that RODRIGUEZ, who clearly resembled JERNIGAN, was apprehended after robbing the Bank of America located at 15 E. Guadalupe Road, Gilbert, Arizona.  That is the very same bank RODRIGUEZ robbed on September 20, 2000, for which JERNIGAN was convicted.

91.    Each of the individual Defendants knew that RODRIGUEZ had been apprehended but failed to inform MORRISSEY of this information who in turn could not meet his obligations to disclose such evidence to JERNIGAN and her criminal appellate attorney. Defendant RICHARD conspired with Defendants BROCK, McLAWS

- 15 -

and LANDGRAF to deliberately withhold this exculpatory evidence from MORRISSEY, the federal prosecutor, who in turn could not meet his obligations to disclose such evidence to JERNIGAN and her criminal defense attorney. The essential nature of the conspiracy was to suppress exculpatory evidence from MORRISSEY. These Defendants' reckless or deliberately indifferent failure to disclose exculpatory evidence deprived JERNIGAN a fair trial in violation of her due process rights and caused the continued unreasonable seizure of JERNIGAN.

92.   Defendants' actions were malicious, or so reckless and/or indifferent to the probability of causing extreme harm to the Plaintiff as to implicitly constitute malice.

**SECOND CLAIM FOR RELIEF**

**FEDERAL CIVIL RIGHTS CLAIMS**

**42 U.S.C. §1983**

**Violation of Plaintiff's Fifth and Fourteenth Amendment Rights**

**Denial of a Fair Trial, Violation of Due Process,**

**Conspiracy to Withhold Exculpatory Evidence**

**(*Brady* Violation)**

**vs.**

**All Defendants Except Defendant City of Gilbert**

93.   Plaintiff realleges and incorporates by reference, each allegation of paragraphs 1 through 84, as though fully set forth hereat.

94.   Defendants RICHARD, BROCK, McLAWS and LANDGRAF were aware of the other two bank robberies[3] committed after JERNIGAN was in custody wherein the suspect was described as an Hispanic or Asian woman whose appearance was

---

[3]The November 28, 2000 and November 30, 2000 bank robberies at Bank One and Bank of America respectively.

strikingly similar to JERNIGAN and whose modus operandi were remarkably similar to the crimes for which JERNIGAN was in custody. Defendants were aware of the exculpatory value of this evidence.

95.  Nevertheless Defendant RICHARD conspired with Defendants BROCK, McLAWS and LANDGRAF to deliberately withhold this exculpatory evidence from MORRISSEY, the federal prosecutor, who in turn could not meet his obligations to disclose such evidence to JERNIGAN and her criminal defense attorney. The essential objective of the conspiracy was to suppress exculpatory evidence from MORRISSEY. These Defendants' reckless or deliberately indifferent failure to disclose exculpatory evidence deprived JERNIGAN of a fair trail in violation of her due process rights.

### THIRD CLAIM FOR RELIEF
### FEDERAL CIVIL RIGHTS CLAIMS
### 42 U.S.C. §1983
### Individual Supervisory Liability
### vs.
### Defendant Randy McLaws

96.  Plaintiff realleges and incorporates by reference, each allegation of paragraphs 1 through __, as though fully set forth hereat.

97.  Defendant McLAWS was responsible for supervising BROCK and LANDGRAF.

98.  McLAWS had a duty to instruct BROCK and LANDGRAF so as to prevent constitutional harm to JERNIGAN.

99.  McLAWS failed to so instruct.

100.  The acts of McLAWS' subordinates, BROCK and LANDGRAF deprived JERNIGAN of her rights under the United States Constitution.

101.  McLAWS directed his subordinates in the acts that deprived JERNIGAN of these rights.

- 17 -

102. McLAWS set in motion a series of acts by his subordinates that he knew or reasonably should have known would cause the subordinates to deprive JERNIGAN of these rights.

103. McLAWS knew, or reasonably should have known, that his subordinates were engaging in these acts and that their conduct would deprive JERNIGAN of these rights.

104. McLAWS failed to act to prevent his subordinates from engaging in such conduct.

105. JERNIGAN was harmed as a proximate result of McLAWS' failures.

## FOURTH CLAIM FOR RELIEF
## FEDERAL CIVIL RIGHTS CLAIMS
### *Bivens* Action
### Violation of Plaintiff's Fifth and Fourteenth Amendment Rights
### (*Brady* Violation)
### vs.
### Defendant Richard

106. Plaintiff realleges and incorporates by reference, each allegation of paragraphs 1 through 84, as though fully set forth hereat.

107. Defendant RICHARD was aware of the other two bank robberies[4] committed after JERNIGAN was in custody  wherein the suspect was described as an Hispanic or Asian woman whose appearance was strikingly similar to JERNIGAN and whose modus operandi were remarkably similar to the crimes for which JERNIGAN was in custody.  RICHARD was aware of the exculpatory value of this evidence.

108. Nevertheless, Defendant RICHARD deliberately withheld this exculpatory evidence from MORRISSEY, the federal prosecutor, who in turn could not meet

---

[4]The November 28, 2000 and November 30, 2000 bank robberies at Bank One and Bank of America respectively.

his obligations to disclose such evidence to JERNIGAN and her criminal defense attorney.   RICHARD'S reckless or deliberately indifferent failure to disclose exculpatory evidence deprived JERNIGAN a fair trail in violation of her due process rights.

## FIFTH CLAIM FOR RELIEF
## FEDERAL CIVIL RIGHTS CLAIMS
### *Bivens* Action
## Violation of Plaintiff's Fourth, Fifth and Fourteenth Amendment Rights
## MALICIOUS PROSECUTION
### vs.
## Defendant Richard

109. Plaintiff realleges and incorporates by reference, each allegation of paragraphs 1 through 84, as though fully set forth hereat.

110. Defendant RICHARD instituted the criminal action against the Plaintiff.

111. The prosecution ended in the Plaintiff's favor when charges were dismissed on February 5, 2008.

112. There was no probable cause to institute the criminal proceeding on which Plaintiff was tried and convicted or to continue the criminal proceeding given the exculpatory information known by RICHARD before and during Plaintiff's trial.

113. No reasonable peace officer under the same facts and circumstances would have believed that there was probable cause to institute or to continue the criminal proceedings against JERNIGAN.

114. Moreover, Defendant RICHARD was aware that on December 11, 2001 while JERNIGAN was still appealing her March 23, 2001 conviction, RODRIGUEZ, who clearly resembled JERNIGAN, was apprehended after robbing the Bank of America located at 15 E. Guadalupe Road, Gilbert, Arizona.  That is the very same

bank RODRIGUEZ robbed on September 20, 2000, for which JERNIGAN was convicted.

115.   RICHARD knew that RODRIGUEZ had been apprehended but failed to inform MORRISSEY of this information who in turn could not meet his obligations to disclose such evidence to JERNIGAN and her criminal appellate attorney.

116.   Defendant RICHARD deliberately withheld this exculpatory evidence from MORRISSEY, the federal prosecutor, who in turn could not meet his obligations to disclose such evidence to JERNIGAN and her criminal defense attorney. RICHARD'S reckless or deliberately indifferent failure to disclose exculpatory evidence deprived JERNIGAN a fair trail in violation of her due process rights and caused the continued unreasonable seizure of JERNIGAN.

117.   Defendants' actions were malicious, or so reckless and/or indifferent to the probability of causing extreme harm to the Plaintiff as to implicitly constitute malice.

///.

**SIXTH CLAIM FOR RELIEF**

**ARIZONA STATE LAW CLAIM**

**MALICIOUS PROSECUTION**

**vs.**

**Defendants City of Gilbert, McLaws, Brock and Landgraf**

118.   Plaintiff realleges and incorporates by reference, each allegation of paragraphs 1 through 84, as though fully set forth hereat.

119.   Defendants BROCK, McLAWS and LANDGRAF instituted the criminal action against the Plaintiff.

120. The prosecution ended in the Plaintiff's favor when charged were dismissed on February 5, 2008.

121. There was no probable cause to institute and/or continue the criminal proceeding on which Plaintiff was tried and convicted given the exculpatory information known by these Defendants before and during Plaintiff's trial.

122. No reasonable peace officer given the same facts and circumstances would have believed that there was probable cause to institute or to continue the criminal proceedings against JERNIGAN.

123. Moreover, Defendants BROCK, McLAWS and LANDGRAF were aware that on December 11, 2001 while JERNIGAN was still appealing her March 23, 2001 conviction, RODRIGUEZ, who clearly resembled JERNIGAN, was apprehended after robbing the Bank of America located at 15 E. Guadalupe Road, Gilbert, Arizona. That is the very same bank RODRIGUEZ robbed on September 20, 2000, for which JERNIGAN was convicted.

124. Each of the individual Defendants knew that RODRIGUEZ had been apprehended but failed to inform MORRISSEY of this information who in turn could not meet his obligations to disclose such evidence to JERNIGAN and her criminal appellate attorney. Defendant RICHARD conspired with Defendants BROCK, McLAWS and LANDGRAF to deliberately withhold this exculpatory evidence from MORRISSEY, the federal prosecutor, who in turn could not meet his obligations to disclose such evidence to JERNIGAN and her criminal defense attorney. The essential nature of the conspiracy was to suppress exculpatory evidence from MORRISSEY. These Defendants' reckless or deliberately indifferent failure to disclose exculpatory evidence deprived JERNIGAN a fair trail in violation of her due process rights and caused the continued unreasonable seizure of JERNIGAN.

125.   Defendants' actions were malicious, or so reckless and/or grossly negligent and/or indifferent to the probability of extreme harm to the Plaintiff as to implicitly constitute malice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.   For compensatory damages against Defendants in an amount to be determined at the time of trial.

2.   For special damages against Defendants in an amount according to proof.

3.   For exemplary damages according to proof against the individual Defendants.

4.   For costs and reasonable attorneys fees incurred in this  action  pursuant to 42 U.S.C. § 1988, which provides for such fees in an action or proceeding to enforce a provision of 42 U.S.C. §1983.

5.   For such further relief as this court deems proper and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

**A**lan **M**. **S**impson, **P.C.**
Attorneys at Law

DATED: December 23, 2008     By:     ___/s/ ALAN SIMPSON__
Alan Simpson
Attorneys for Plaintiff Rachel Jernigan