**WO**

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                         FOR THE DISTRICT OF ARIZONA

8

9   Rachel Jernigan,                    )    No. CV-08-2332-PHX-GMS
                                        )
10             Plaintiff,               )    **ORDER**
                                        )
11  vs.                                 )
                                        )
12                                      )
    Kyle Richard, et. al.,              )
13                                      )
               Defendants.              )
14                                      )
                                        )
15  _____

16          Pending before this Court is Plaintiff's Motion to Amend Scheduling Conference

17  Order and For Leave to File a First Amended Complaint (Dkt. #90). For the reasons set forth

18  in this Order, the motion is denied.

19          This case arises from the alleged wrongful arrest, conviction and incarceration of

20  Plaintiff for bank robbery. Five similar bank robberies occurred in East Valley cities over

21  the course of approximately two months in late 2000. The first occurred on September 20,

22  2000 in Gilbert. After the first robbery, Defendants Pamela Elliott (fka "Brock") and Kyle

23  Richard prepared a photo line-up (# 1153) and showed it to the victim/teller of the robbery.

24  The victim identified Plaintiff as the perpetrator. The second bank robbery occurred on

25  October 11, 2000 in Tempe. The third occurred on October 25, 2000 in Chandler. On

26  November 10, 2000, Plaintiff was originally arrested, and taken into custody for committing

27  the September 20 bank robbery. After Plaintiff was taken into custody, a fourth and fifth

28  bank robbery occurred – one on November 28 in Gilbert, and another on November 30 in

Mesa. These two bank robberies bore at least some similarity to the bank robbery for which Plaintiff was arrested and to the two that had occurred in October. Nevertheless, these two additional November bank robberies that occurred after Plaintiff was taken into custody were not brought to the attention of the Assistant United States Attorney prosecuting Plaintiff. That attorney then sought, and obtained a superceding indictment charging Plaintiff with the September 20 (Gilbert), October 11 (Tempe), and October 25 (Chandler) bank robberies, presumably based on the testimony before the federal grand jury of FBI Agent Kyle Richard.

On February 15, 2001, Plaintiff moved to suppress the identification of her by the teller in the first bank robbery, because photo line-up #1153 prepared by Brock and Richard and shown to the teller was overly suggestive. The motion was denied. Plaintiff went to trial. At trial, the photo line-up was introduced into evidence and Brock and Richard testified. Plaintiff was convicted on March 23, 2001 of counts one and two of the superceding indictment. Eight months later, in December 2001, a similar bank robbery occurred at the same location as the first bank robbery for which Plaintiff had been convicted. Juanita Rodriguez-Gallegos was arrested for committing the robbery. Plaintiff alleges that Rodriguez-Gallegos confessed to all six of the east valley bank robberies including all of those for which Plaintiff had been convicted.

Plaintiff's conviction was set aside in 2008 based on the failure of the government to provide Plaintiff with evidence of the similar bank robberies that continued to occur after Plaintiff was taken into custody for the initial bank robbery.

Plaintiff filed the instant complaint on December 23, 2008. The Complaint asserts that lineup (# 1153) was overly suggestive "and was prepared with such recklessness as to make it entirely unreliable to establish probable cause to arrest and irreparably prejudiced JERNIGAN'S right to a fair trial." Dkt. # 1 at ¶ 24. It further asserts that Defendants Richard, Brock, David Landgraf and Randy McLaws were aware of the bank robberies on November 28 (Gilbert) and November 30 (Mesa), they further knew that the description of the suspect in these two robberies closely matched the description in the robberies for which Plaintiff had been arrested, that the modus operandi was similar, and that all the banks were

located within a few miles of each other.  The Complaint alleges that the Defendants further knew that Plaintiff could not have committed these robberies because Plaintiff was in custody and yet "[a]t no time prior to the submission to the grand jurors, on January 2, 2001, of the investigation of JERNIGAN, did these Defendants provide advice to Assistant United States Attorney Michael Morrissey (MORRISSEY) that two bank robberies had occurred after JERNIGAN had been arrested and detained, committed by a suspect of a similar description" to the earlier bank robberies.  *Id*. at ¶ 41.  *See also* ¶¶ 68-72, 83.

The Complaint also asserts that Richard, Brock, Landgraf and McLaws also knew that the subsequent December 11, 2001 bank robbery in Gilbert was committed by someone with a similar description and using a similar modus operandi to that of the previous robberies. Yet the complaint alleges "[t]hese Defendants failed to advise MORRISSEY or any other competent authority of RODRIGUEZ' arrest and the many facts that linked RODRIGUEZ to robberies charged in JERNIGAN's superceding indictment."  *Id*. at ¶ 52, *see also* ¶¶ 68-72, 83.

The original Complaint brought no § 1983 claims against the Town of Gilbert.  It did, however, assert two § 1983 claims against Town of Gilbert officers Elliot, Landgraf  and McLaws (in addition to FBI Defendant Richard).  The first § 1983 claim alleged that the specified Defendants conspired to violate Plaintiff's Fourth, Fifth and Fourteenth Amendment rights (the malicious prosecution claim).  The second alleged that the specified Defendants conspired to violate Plaintiff's Fifth and Fourteenth Amendment rights to a fair trial (the Brady Claim).  The Complaint also alleges § 1983 causes of action against McClaws, for individual supervisory liability related to the conduct of Elliot and Landgraf, and various 1983 claims against Richard.  It also asserts a state law malicious prosecution claim against the Town of Gilbert.

The Court entered its Case Management Order on July 31, 2009, (Dkt. #29 ¶ 2) the Court required that any amendments to the Complaint be filed by September 29, 2009.  No such amendments were filed, nor did any party seek an extension in the deadlines.  On May 20, 2010, eight months after the deadline for amending the Complaint and two months prior

to the discovery deadline in this matter, Plaintiff filed a motion seeking to amend the scheduling order. Plaintiff seeks to add a *Monell/Canton* claim against the Town of Gilbert based on its failure to train its police officers and an allegation that the individual Town Defendants should have known that their photo line up was unduly suggestive, and should have known that all six bank robberies were committed by the same person. The motion was not fully briefed until June 14, approximately one month prior to the end of discovery. Plaintiff's proposed *Monell* Claim alleges the Town's deliberate indifference in failing to instruct, or having a policy not to instruct, its officers on their *Brady* obligations, and its deliberate indifference in failing to instruct, or having a policy not to instruct, its officers on how to appropriately prepare a proper photo line-up.

The Ninth Circuit has set forth, at some length, the legal standard that governs a party's motion to amend a scheduling order to permit an additional amendment to the complaint. Before permitting the scheduling order to be amended the moving party must establish "good cause" justifying the request for an extension.

> 'A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15.' . . . Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension.
>
> . . .
>
> Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Plaintiff's claim, as it was initially filed, was based on both the failure of the law enforcement officers to communicate to the federal prosecutor the subsequent similar bank robberies that occurred in November after Plaintiff's arrest, and the arrest of a subsequent suspect after the December 2001 robbery. It was also based on the preparation of lineup (# 1153) by law enforcement officers that Plaintiff had claimed, since 2001, was overly

suggestive.

Well before it filed its initial Complaint, Plaintiff was aware of potential claims that the Town failed to appropriately train its officers. In the notice of claim that by Arizona law is required to be filed against a municipality prior to asserting state law claims against it, and that was here filed with the Town in July of 2008, Plaintiff indicated that her claims were based, at least in part, on the breach of the duty of the officer's "municipal employer" and "supervisory employees" "to properly instruct and train their employees and/or subordinates." It is true that a § 1983 action against a municipality requires something more than mere negligence on the part of the Town. At a minimum it requires "deliberate indifference" by the municipality to the federal rights of the plaintiff. The policy of inaction must be a conscious or deliberate choice among various alternatives. *Berry v. Baca,* 379 F.3d 764, 767 (9th Cir. 2004). As Plaintiff notes she "must establish: (1) that [s]he possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to 'deliberate indifference to the plaintiff's constitutional right; and (4) that the policy [was] the 'moving force behind the constitutional violation.'" Oviatt v. Pearce, 954 F.2d 1470,1474 (9th Cir. 1992).

Six months prior to the time that she filed her Complaint, however, Plaintiff had already effectively alleged: (1) that she had been deprived of a constitutional right; (2) that the municipality had a policy of inaction in failing to train; and, (3) that the policy of failing to train was, to at least to some extent, the moving force behind the denial of her rights. Arguably such allegations alone, based in a plausible application of the facts as Plaintiff then understood them, would have been a sufficient basis on which Plaintiff could have asserted in good faith § 1983 failure to train claims against the Town had she chosen to do so. She did not. We assume, however, giving Plaintiff the benefit of the doubt, that she did not feel that she could allege a § 1983 cause of action against the Town for its failure to train absent some facts on which she could allege that the Town's failure to train demonstrated the Town's deliberate indifference to her constitutional rights.

In attempting to amend the Complaint eight months after the scheduling order

deadline, however, Plaintiff does not argue that she ever sought such discovery, or that its recent discovery of such facts demonstrating deliberate indifference in the Town's failure to train justifies the late amendment. Instead, she attempts to justify the late amendment based on her February 2010 "discovery" that the town provided no training concerning its officers *Brady* obligations or use of software for the creation of photo line ups. This alleged discovery rings hollow in light of four facts.

First, Plaintiff had alleged the Town's failure to train in its July 2008 notice of claim letter, so she had to be aware of that possibility, at least as of July 2008.[1] And, if the Town's failure to train was her concern, she could have easily discovered any necessary additional information to amend her Complaint to assert such a failure by the end of September 2009, or she could have raised to the Court the necessity of more time in which to do so at the scheduling conference, or at least prior to the deadline for amendments. She did none of these things.

Second, when it responded to her Complaint in June 2009, the Town explicitly admitted that none of the "Town Defendants" contacted Mr. Morrissey, the Assistant United States Attorney who prosecuted Plaintiff, regarding either the November 2000, or December 2001 bank robberies that occurred in the Town. Further, the Answer asserts that "they had no duty to so advise the federal prosecutor." To the extent that Plaintiff believes that it was the Town's obligation under *Brady* to advise the federal prosecutor of these additional bank robberies, and thus a denial of her federal rights not to have instructed its police officers on their asserted *Brady* obligations, she must have been aware, as of the filing of the Town's Answer on June 19, 2009, that it disclaimed any such obligation. She, nevertheless, did not seek to assert such claims until over eleven months later.

---

[1] Counsel's argument that the proof of claim was broadly drafted for a larger array of possible defendants does not diminish this observation. Obviously the allegation in the proof of claim was included to allege liability against the municipalities, and the Town is such a Defendant. Thus, Plaintiff was aware of the possible liability arising against municipalities from a failure to train.

Third, in August 2009, Plaintiff received discovery responses from the Town describing the training it provided to the three officers including any training on "bank robbery investigation, modus operandi of bank robbers, crime pattern analysis, photo line ups, polygraph examinations, and compliance with *Brady* disclosure obligations." The response provided by the Town, detailing the training requested, indicated that no *Brady* training had been provided. The Town further indicated in early September that it had no documents provided by ImageWare software regarding the use and/or operation of photo lineup computer software prior to September 22, 2000. Further, it is evident from the September 3 e-mail correspondence between the parties concerning the deposition of a 30(b)(6) designee of ImageWare software that they were aware of the upcoming deadline regarding the amendment of pleadings. Yet, they never took any action with this Court to extend those deadlines.

Fourth, to the extent Plaintiff alleges that she did not discover the Town's failure to train its officers concerning their asserted *Brady* obligation in February 2010, almost five months after the deadline for amending the Complaint, she does not explain why she awaited until eight months after the deadline, effectively one month prior to the discovery deadline, before seeking leave to amend her Complaint. She does allege that it was necessary to complete the depositions of all Defendants prior to seeking to amend, and that the last of those depositions did not occur until late April. But, she does nothing to explain why the deposition of all the Defendants was necessary, or why they did not occur earlier, until approaching the end of the designated discovery period. Plaintiff has successfully held the Town responsible for its strategic choices not to seek to obtain necessary discovery earlier in the litigation. *See, e.g.,* Dkt. # 77. It offers no persuasive reason why this Court should treat her differently, especially in light of the explicit deadline set forth for amendments to the Complaint.

Nor does Plaintiff offer any reason justifying an amendment to add the allegation that the Town Defendants are liable either because they knew or should have known of the deficiency of the photo line up or that Rodriguez-Gallegos was the individual responsible for

all six bank robberies. Plaintiff offers a suggested pattern jury instruction describing under what conditions a jury may infer knowledge from facts available to defendant and what facts may give rise to a duty of inquiry upon the part of defendant. Still, what jury instructions may or may not be appropriate based on the knowledge allegations in the Complaint, do not provide a justification for changing the allegations at this late date. Certainly, there is no reason to believe that Plaintiff was unaware of her position asserted since 2001, that the photo line-up was overly suggestive. Plaintiff also fails to suggest that there was a reasonable basis on which she failed to investigate her own allegation in her proof of claim, that part of the responsibility for that suggestiveness resulted from the Town's failure to train.

Finally, Plaintiff does not suggest that the jury instruction itself represents new law such that Plaintiff would have been prevented from asserting this position prior to the deadline set for amending her Complaint.

The fact that Plaintiff took the Defendants' depositions prior to the discovery cut-off date of July 17, 2010 does not establish good cause for an extension of the time in which to amend her Complaint. Were this the case, the Court would not bother to set a cutoff for amending the Complaint well-prior to the termination of discovery that serves to define the claims on which discovery can be sought. Nor does the fact that the parties' counsel have frequently sought the Court's assistance in resolving discovery matters justify the late amendment, absent the specific allegation that any part of these discovery disputes related to now-discovered information that justifies the late-filing of an amendment. Plaintiff provides no such arguments. Plaintiff asserts that no additional discovery will be necessary should this Court grant the amendment. Of course, should the Court allow the new claims and then refuse to allow additional discovery on them, that would actually result in great prejudice to the Defendants. As Defendants note, the new nature of the claims asserted relate not only to what the Town did not do, but whether they did not do it in a manner that amounted to "deliberate indifference" with respect to the federally-protected rights of the Plaintiff. It seems to the Court that allowing the amendment would require the Court in fairness to reset the entire discovery schedule in this matter to permit discovery or disclosure

of why Gilbert did or did not provide the training that the individual officers received, and if that training, or lack thereof, provides sufficient evidence of the Town's deliberate indifference to Plaintiff's rights. On the facts presented, the Court cannot conclude that Plaintiff was diligent in seeking to amend her Complaint to add the above claims. Therefore,

**IT IS HEREBY ORDERED** denying Plaintiff's Motion to Amend/Correct re Motion to Amend Scheduling Conference Order and for Leave to File a First Amended Complaint (Dkt. # 90).

DATED this 29th day of June, 2010.

G. Murray Snow
United States District Judge